838 So.2d 41 (2003)
STATE of Louisiana
v.
Derrick WIX and Michael Smith.
No. 2002-KA-1493.
Court of Appeal of Louisiana, Fourth Circuit.
January 15, 2003.
*43 Laura Pavy, Louisiana Appellate Project, New Orleans, LA, for Michael Smith.
Mary Constance Hanes, Louisiana Appellate Project, New Orleans, LA, for Derrick Wix.
Harry F. Connick, District Attorney Of Orleans Parish, Scott Peebles, Assistant District Attorney, New Orleans, LA, for Plaintiff/Appellee.
(Court Composed of Chief Judge WILLIAM H. BYRNES III, Judge MAX N. TOBIAS, JR., and Judge DAVID S. GORBATY).
MAX N. TOBIAS, JR., Judge.
The defendants, Michael Smith ("Smith") and Derrick Wix ("Wix"), were each charged by bill of information on 3 March 2000 with one count of attempted second-degree murder, one count of attempted armed robbery, and three counts of armed robbery, respective violations of La. R.S. 14:(27)30.1, 14:(27) 64, and 14:64. The defendants pleaded not guilty at their 13 March 2000 arraignment. On 22 June 2000, Wix elected to have a judge trial. On 28 June 2000, a twelve-person jury found Smith guilty of one count of attempted armed robbery, one count of attempted second-degree murder, and two counts of armed robbery. On 30 June 2000, the trial court found Wix guilty of three counts of attempted armed robbery, and one count of aggravated battery. On 15 December 2000, Smith was sentenced to twenty-one years for one count of attempted armed robbery, thirty years for one count of attempted second-degree murder, and thirty-seven years for each of the two remaining counts of armed robbery. On that same date, Wix was sentenced to seventeen years for one count of attempted armed robbery, seven years for one count of aggravated battery, and seven years for each of the remaining two counts of attempted armed robbery. On 5 April 2002, the trial court granted the defendants an out of time appeal.

STATEMENT OF FACTS
Warren Henderson testified that on 24 December 1999, he was outside his front door on Kent Street when two black men "came out of nowhere, and pulled a gun." He described the gun as a gold 9 millimeter. Mr. Henderson ran to his front door to alert his mother when he heard gunshots. His brother, Germaine Henderson, who had been cleaning his truck, had been shot. Mr. Henderson identified the defendants as the two black male perpetrators. Mr. Henderson further testified that each of the defendants had guns that day.
Leola Henderson testified that at some point she heard a noise, looked outside, and saw her sons, Warren and Germaine, being held at gunpoint by two individuals. *44 Ms. Henderson further testified that she immediately called the police. While calling the police she heard gunshots, she looked out and saw that her son, Germaine, had been shot. Ms. Henderson testified that she did not get a good look at the two gunmen.
Germaine Henderson testified that on 24 December 1999, he was robbed outside of his mother's home. He further testified that the gunman shot him out of apparent frustration because he could not steal his vehicle. He identified the defendants as the gunmen who approached him and his brother. He further identified Smith as the gunman who shot him.
Detective John Duzak, of the New Orleans Police Department, testified that he prepared photographic line-ups and showed them to both Warren and Germaine Henderson. Both Henderson brothers selected Smith out of the line-ups. Mr. Germaine Henderson also picked Wix out of a photographic line-up. A search warrant was executed on Wix's residence where an empty box of .38 caliber bullets and an AK-47 clip were seized.
Officer Sylvester Burke, of the New Orleans Police Department, testified that he responded to the shooting on 24 December 1999. Officer Burke spoke to Mr. Germaine Henderson who stated that he was robbed and shot.
Christopher Lesley testified that as he and his fiancée, Janet Meyer, while walking near the intersection of Alex and Sequin Streets in Algiers, encountered two men who passed them by wearing dark hooded jackets. Mr. Lesley stated that once the two men got a short distance away from them, the men turned around with guns in their hands demanding their money. He testified that each man had a 9-millimeter gun in his hand. One of the gunmen concentrated on him and the other on his fianceé. Mr. Lesley gave the gunman his money and his watch, while his fianceé gave her purse to the gunman and then lay on the ground with her face in the opposite direction. Mr. Lesley further testified that the man who held the gun on him pulled the trigger, but it jammed and did not fire. Once the gunmen left, the couple went to a nearby home and called the police. He testified that he was shown a photographic line-up, and he positively identified both of the defendants as the men who robbed them.
Janet Meyer gave corroborating testimony. She also testified that she was unable to identify the defendants as the gunmen who robbed her and Mr. Lesley because she lay on the ground and did not get a good look at their faces.
Officer Karl Marshall, of the New Orleans Police Department, testified that on 27 December 1999, he was dispatched to a robbery scene at Alex and Sequin Streets in the Algiers area. Upon arrival on the scene Officer Marshall spoke to the victims, Chris Lesley and Janet Meyer. Mr. Lesley told Officer Marshall that two black males with guns robbed them. Mr. Lesley told him that the gunmen took thirty dollars from him, and Ms. Meyer gave them her purse.
Detective Troy Williams, of the New Orleans Police Department, testified that he noted a similarity between the robbery on 24 December 1999, and 27 December 1999, so he showed the photographic lineups from the Henderson robbery to Mr. Lesley and Ms. Meyer. Mr. Lesley positively identified both defendants from the line-up as the gunmen who robbed them. Ms. Meyer was unable make an identification.

ERRORS PATENT
A review of the record for errors patent reveals that the trial court failed to impose the defendants' sentences for attempted *45 armed robbery, armed robbery, and attempted second degree murder without the benefits of probation, parole, or suspension of sentence. Paragraph A of La. R.S. 15:301.1 provides that in instances where the statutory restriction are not recited at sentencing, they are included in the sentence given, regardless of whether or not they are imposed by the sentencing court. See State v. Williams, XXXX-XXXX (La.11/28/01), 800 So.2d 790. Hence, this court need take no action to correct the trial court's failure to specify that the defendants' sentences be served without benefit of parole, probation or suspension of sentence. The correction is statutorily effected. (La. R.S. 15:301.1A).

DISCUSSION

DEFENDANT SMITH'S ASSIGNMENT OF ERROR NUMBER 1
Smith complains that the trial court erred in denying his motion for mistrial because the State introduced inadmissible and irrelevant evidence, to-wit, the AK-47 clip found in the co-defendant's home. Specifically, Smith argues that the evidence had no probative value and its prejudicial effect deprived him of a fair trial.
Trial courts have great discretion in determining whether to grant a mistrial. Vicknair v. Dimitryadis, 93-0003 (La.App. 4 Cir. 1/13/94), 640 So.2d 275.
The New Orleans Police executed a search warrant of Wix's home and confiscated an empty ammunition box and an AK-47 clip. Smith argues that the AK-47 clip was irrelevant to this case because the victims of the alleged crimes did not state that an AK-47 was used in the perpetration of the crimes. Therefore, Smith claims he was prejudiced by the admission of the evidence as it served no purpose other than to confuse the jury.
La. C.E. art. 401 defines relevant evidence as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. La. C.E. art. 402 provides that all relevant evidence is admissible. If the evidence supports an inference raised by relevant fact, the evidence is admissible. State v. Shepherd, 332 So.2d 228 (La.1976). To be admissible, demonstrative evidence must be identified and authenticated. La. C.E. art. 901; State v. Richardson, 96-2598 (La. App. 4 Cir. 12/17/97), 703 So.2d 1371, 1373. As a foundation for admitting demonstrative evidence, it must be established that the object sought to be introduced is more probably than not connected with the case. State v. Duncan, 99-0778 (La.App. 4 Cir. 4/19/00), 761 So.2d 586, writ den. XXXX-XXXX (La.6/22/01), 794 So.2d 778. In determining the relevance of evidence, much discretion is afforded the trial judge. State v. Sholes, 99-2414 (La.App. 4 Cir. 3/7/01), 782 So.2d 691.
In this case, three of the four victims testified that the perpetrators used a 9-millimeter weapon. No evidence was presented that the perpetrators of the crimes used an AK-47. It appears that the AK-47 clip was irrelevant to the case, and the trial court erred in admitting it into evidence. However, it also appears that the error was harmless. The test used in deciding if a trial error is harmless is whether it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)[1].
*46 In the instant case, the State did not argue that the AK-47 clip was connected to the crime for which the defendants were on trial. Additionally, three of the victims in the case made out-of-court and in-court identifications of the defendants as the persons who robbed them at gunpoint. It is unlikely that the jury convicted Smith based on the AK-47 clip being admitted into evidence. Therefore, as any error in admitting the evidence did not contribute to the verdict. The assignment of error is without merit.

DEFENDANT SMITH'S ASSIGNMENT OF ERROR NUMBER 2
Smith complains the trial court imposed excessive sentences for his armed robbery convictions.[2]
Although a sentence is within the statutory limits, the sentence may still violate a defendant's constitutional right against excessive punishment. State v. Sepulvado, 367 So.2d 762 (La.1979). A sentence is unconstitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the needless and purposeless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime. State v. Lobato, 603 So.2d 739 (La.1992).
Generally, a reviewing court must determine whether the trial judge adequately complied with the sentencing guidelines set forth in La.C.Cr.P. art. 894.1 and whether the sentence is warranted in light of the particular circumstances of the case. State v. Soco, 441 So.2d 719 (La. 1983).
If adequate compliance with Article 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of his case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Quebedeaux, 424 So.2d 1009 (La.1982).
The trial judge is given wide discretion in imposing a sentence, and a sentence imposed within the statutory limits will not be deemed excessive in the absence of manifest abuse of discretion. State v. Walker, 96-112 (La.App.3 Cir. 6/5/96), 677 So.2d 532, 535, citing State v. Howard, 414 So.2d 1210 (La.1982).
In State v. Watson, 575 So.2d 411 (La. App. 4 Cir.1991), this court found a fifty-year sentence for a single count of armed robbery was not excessive. In State v. Jacquet, 96-1183 (La.App. 3 Cir. 2/19/97), 688 So.2d 1337, the Third Circuit found a sixty-year sentence for armed robbery was not excessive.
In the instant case, Smith was sentenced to thirty-seven years for each of his two armed robbery convictions. The sentences fall within the statutorily mandated sentencing range. Smith has failed to rebut the presumption that the sentences are constitutional. This assignment of error is without merit.

*47 DEFENDANT WIX'S ASSIGNMENT OF ERROR NUMBER 1
Wix complains that the evidence was insufficient to support his conviction for attempted armed robbery and aggravated battery.
When assessing the sufficiency of evidence to support a conviction, the appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La.1987).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. La. R.S. 15:438 is not a separate test from Jackson, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). The trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Patton, 479 So.2d 625 (La.App. 1 Cir.1985).
La. R.S. 14:34 defines aggravated battery as a battery committed with a dangerous weapon. La. R.S. 14:33 defines a battery as the intentional use of force or violence upon the person of another or the intentional administration of a poison or other noxious liquid or substance to another.
Aggravated battery is a crime of general intent, meaning that the State need only prove the offender must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act. State of Louisiana in the Interest of H.L.F. and R.J.T., 97-2651, p. 3 (La.App. 4 Cir. 5/20/98), 713 So.2d 810, 812.
To support a conviction of aggravated battery the State has the burden to prove three elements: (1) that the defendant intentionally used force or violence against the victim, (2) that the force or violence was inflicted with a dangerous weapon, and (3) that the dangerous weapon was used in a manner likely to cause death or great bodily harm. State v. Rainey, 98-436 (La.App. 5 Cir. 11/25/98), 722 So.2d 1097, 1102.
Wix argues that the shooting victim, Germaine Henderson, identified Smith as the person who shot him, and Wix as the person who held a gun to his head before he was shot by Smith. Therefore, he asserts that the evidence was insufficient to support a conviction of aggravated battery. However, this court in State of Louisiana in the Interest of Frank A. Ruschel, 411 So.2d 1216, 1217 (La.App. 4 Cir.1982), found:
One may be guilty as a principal to a crime if he directly commits the act constituting the offense, aids and abet its commission, or directly or indirectly counsels or procures another to commit the crime, whether he is present or absent. The law will impose criminal liability upon a principal for the same reason it imposed such liability upon a co-conspirator; that is, because both of these inchoate offenses are directed at persons who knowingly participate in planning or executing the crime.
*48 Under general principles of accessorial liability "all parties [to a crime] are guilty for deviations from the common plan which are the foreseeable consequences of carrying out the plan.... Acting in concert, each man then became responsible not only for his own acts but for the acts of the other." State v. Smith, 98-2078, p. 7 (La.10/29/99), 748 So.2d 1139, 1143, quoting 2 LaFave & Scott, Substantive Criminal Law, § 7.5, p. 212, and citing State v. Anderson, 97-1301, p. 3 (La.2/6/98), 707 So.2d 1223, 1224.
In the instant case, the testimony of the Henderson brothers confirms that Wix was present and participated in the robbery of the victims. Additionally, it is foreseeable that an armed robbery victim may be shot during the perpetration of the robbery, particularly when both of the perpetrators, as in the instant case, held weapons on the victim. Therefore, the evidence was sufficient to prove Wix was a principal to the shooting of Germaine Henderson. See State v. Marshall, 94-1282 (La.App. 4 Cir. 6/25/95), 657 So.2d 1106, where this court found sufficient evidence that the defendant was a principal to a murder[3]. See also State v. Hall, 98-0667 (La.App. 4 Cir. 12/22/99), 750 So.2d 1105, where this court affirmed the defendant's second degree murder conviction.[4]
Wix also complains the evidence was insufficient to support his conviction of attempted armed robbery.
La. R.S. 14:64 defines armed robbery as the taking of anything of value belonging to another from the person of another, by use of force or intimidation, while armed with a dangerous weapon.
La. R.S. 14:27 provides that any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
Attempted armed robbery is comprised of the following elements: (1) the specific intent to take something of value; (2) from another person; (3) using force or intimidation; (4) armed with a dangerous weapon; and, (5) the perpetrator further does or omits an act for the purpose of and tending directly toward robbery. State v. Johnson, 466 So.2d 741 (La.App. 4 Cir. 1985). In the two separate incidents for which Wix was charged, three of the four victims testified that Wix was one of the two men who used hand guns to demand valuables. The elements required for the crime of attempted armed robbery were satisfied. The assignment of error is without merit.

CONCLUSION
The convictions and sentences of both Smith and Wix are affirmed.
CONVICTIONS AND SENTENCES AFFIRMED AS TO BOTH DEFENDANTS.
NOTES
[1] The Chapman standard was later refined in Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 2079, 124 L.Ed.2d 182 (1993), as follows:

Consistent with the jury-trial guarantee, the question [Chapman] instructs the reviewing court to consider is not what effect the constitutional error might generally be expected to have upon a reasonable jury, but rather what effect it had upon the guilty verdict in the case at hand.... The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error.
[2] Smith oral motion for reconsideration of his sentences was denied.
[3] The defendant and another man were seen together at the time and place of the shooting. Both the defendant and the other man were armed, and one witness saw the other man shoot the victim. The defendant and the shooter fled together. On appeal, this court found this evidence sufficient proof that the defendant was a principal to the shooting, even though the State was unable to prove that he fired the fatal shot.
[4] The defendant drove the actual shooter to the scene of the crime, waited in the car while the shooter repeatedly shot the victim, and then allowed the shooter back into the car and drove him from the scene.