| STATE OF LOUISIANA | * | NO. 2021-KA-0730 |
|---|---|---|
| VERSUS | * | |
| | | COURT OF APPEAL |
| DWIGHT HARVEY | * | |
| | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

* * * * * * *

APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 524-328, SECTION "J"
Honorable Darryl A. Derbigny, Judge
* * * * * *
**Judge Joy Cossich Lobrano**
* * * * * *
(Court composed of Judge Roland L. Belsome, Judge Daniel L. Dysart, Judge Joy Cossich Lobrano)

***BELSOME, J., CONCURS IN THE RESULT***

Jason R. Williams
DISTRICT ATTORNEY FOR ORLEANS PARISH
G. Ben Cohen
Chief of Appeals
619 South White Street
New Orleans, LA 70119

      COUNSEL FOR APPELLEE/STATE OF LOUISIANA


Kevin Vincent Boshea
ATTORNEY AT LAW
2955 Ridgelake Drive, Suite 207
Metairie, LA 70002

      COUNSEL FOR DEFENDANT/APPELLANT


      **CONVICTIONS AND SENTENCES AFFIRMED IN PART; VACATED IN PART; REMANDED**

      **MAY 25, 2022**

*JCL*

*DLD*

On April 9, 2015, a grand jury indicted the defendant, Dwight Harvey ("Defendant"), on the charges of second degree murder[1] of Aaron Martin ("Martin"), attempted second degree murder[2] of Curtis Joseph ("Joseph"), and obstruction of justice[3] in connection with the commission of the second degree murder of Martin. After a three-day trial, on February 7, 2019, a jury found Defendant not guilty of second degree murder, guilty of the lesser included offense of aggravated battery, and guilty of obstruction of justice.

On December 19, 2019, the district court sentenced Defendant to ten years at hard labor without benefit of parole, probation or suspension of sentence on the aggravated battery conviction and forty years at hard labor on the obstruction of justice conviction. The sentences were ordered to be served consecutively. After the sentences were rendered, defense counsel objected to the sentences. Defense counsel subsequently filed a motion for new trial, which the district court denied. The present appeal follows.

---

[1] La. R.S. 14:30.1.

[2] La. R.S. 14:(27)30.1.

[3] La. R.S. 14:130.1.

For the following reasons, we affirm Defendant's conviction and sentence for obstruction of justice. Additionally, in light of the Supreme Court's recent holding in *Ramos v. Louisiana*, 590 U.S. ---, 140 S.Ct. 1390, 206 L.Ed.2d 583 (2020), we vacate Defendant's conviction and sentence for aggravated battery and remand to the district court for further proceedings.

**STATEMENT OF FACTS**

New Orleans Police Department ("NOPD") Officer Jermell Taylor testified that on January 18, 2015, he responded to a 911 call of a suspicious person at 3017 N. Derbigny Street.[4] When he arrived on the scene, Officer Taylor observed a man, later identified as Joseph, lying on the front porch of the residence. Joseph was bleeding and appeared to have gunshot wounds in his face and back. Joseph identified Defendant as the person who had shot him and stated that the shooting had occurred at a residence located around the corner.

Joseph testified that he was currently incarcerated for a term of ten years in connection with a felony theft conviction relating to shoplifting. He further testified that, in addition to the convictions for which he was presently in prison, he had numerous prior convictions.

Joseph testified that on January 18, 2015, he was sleeping at Martin's house on Montegut Street.[5] He fell asleep at 8:00 a.m., having stayed up all night "shooting up with heroin and cocaine." Joseph stated that when he woke up, he heard a gunshot. Joseph testified that he witnessed Martin fall to the floor, asked

---

[4] A recording of the 911 call was authenticated by NOPD Sergeant Merrell Merricks, custodian of records of the communications division. The call was played for the jury. In the call, the caller reported that an unknown man was lying on the caller's front porch at 3017 N. Derbigny Street.

[5] Martin's mother, Corma Green, testified that at the time of his death, Martin was living in her former home on Montegut Street.

3

Defendant what he was doing, and then, Defendant started shooting at him. Thereafter, Joseph ran towards the back of the house and escaped through a window. Joseph described the firearm used by Defendant as a .380 caliber handgun. He recalled running to the front porch of a house on Derbigny Street and identifying Defendant as the person who shot him. Joseph made an in-court identification of Defendant as the person who shot him and Martin. On cross-examination, Joseph testified that after escaping the house, he saw Defendant get into a black Chevrolet Tahoe and drive away from the scene.

Joseph's sister testified that she knew of no "beef" Defendant had with either her brother or Martin and was surprised when she heard that Defendant had shot her brother and killed Martin.

NOPD Commander Nicholas Gernon[6] testified that he, along with Detective Amy Robinson, traveled to Avoyelles Parish, where Defendant was ultimately located in a motel and arrested in connection with the shootings, to take a statement from Defendant.

On cross-examination, Commander Gernon confirmed that Defendant stated, approximately seven times, that he and Joseph "were tussling over the gun." Commander Gernon elaborated that Defendant initially denied being present at the Montegut Street residence on the day of the shootings. Commander Gernon stated: "He (Defendant) also told me he was in Hammond that day, told me he was uptown, told me he was at work - -." Later, after it was explained to Defendant "how cell phone technology works and we (the police) could figure out where he was … [his] story started to evolve." Defendant eventually admitted to being at the Montegut Street house, stating that Joseph "pulled out a gun" and that they were

---

[6] Nicholas Gernon was the lieutenant over the homicide division at the time of the shootings.

"tussling over the gun." Further, a review of Defendant's videotaped statement, introduced into evidence as State's exhibit 14, reflected that he admitted to leaving the Montegut Street residence. Specifically, Defendant admitted to leaving the residence via the front door after Joseph was shot.

NOPD Detective Amy Robinson was assigned the investigation of the shootings. She testified that a search warrant for the Montegut Street residence was procured, pursuant to which an assault rifle was found, along with some live ammunition.[7] Pills and drug paraphernalia were also found at the residence. Additionally, six .380 casings were recovered. Detective Robinson testified that all of the casings were fired from the same weapon, but that the weapon was not recovered.

Based on Joseph's identification of Defendant as the shooter, Detective Robinson procured a warrant for Defendant's arrest. Upon learning of Defendant's arrest in Avoyelles Parish, Detective Robinson, along with Commander Gernon, relocated to Avoyelles Parish to question Defendant.

On re-direct examination, Detective Robinson testified that Defendant claimed in the statement he provided to Detective Robinson and Commander Gernon that he was at Martin's Montegut Street house to purchase drugs. Further, Defendant admitted to taking the gun used to shoot Martin and Joseph from the scene, stating that he gave the gun "to a guy named Laru."

Detective Eddie Williams worked in the NOPD digital forensics lab where his role was to process electronic equipment and report any relevant findings to the

---

[7] Detective Robinson confirmed on cross-examination that in addition to the assault rifle, a silver handgun was found at the Montegut Street residence. As discussed *infra*, it was established, pursuant to Sergeant Barrere's testimony, that this silver gun was, in actuality, a lighter shaped like a gun and not an actual firearm.

lead detective assigned to the case. Detective Williams testified that he processed three cell phones provided to him in the present case but was unable to extract any useful data from the cell phones.

Dr. Samantha Huber, chief forensic pathologist at the Orleans Parish Coroner's Office, was accepted, without objection, as an expert in forensic pathology. Dr. Huber testified that she performed an autopsy on the decedent, Martin, following which, she classified the shooting as a homicide.

Sean McElrath ("McElrath"), Section Chief of the Forensic Firearms Unit for the NOPD Crime Lab, was accepted, without objection, as an expert forensic firearms examiner. McElrath testified that the six fired .380 auto caliber cartridge cases found on the scene were fired from the same weapon.

New Orleans Police Sergeant Robert Barrere was responsible for documenting the crime scene. Sgt. Barrere testified that he found a "gun lighter," which he explained was a lighter in the shape of a "small silver replica of a gun."

## ASSIGNMENTS OF ERROR

Defendant raises seven assignments of error:

1.  The verdict of guilty of obstruction of justice is contrary to the law and the evidence.

2.  The district court erred in the denial of the motion for new trial.

3.  The verdict of aggravated battery is contrary to the law and the evidence.

4.  The district court erred in the imposition of the maximum sentence of forty years for obstruction of justice.

5.  The district court erred in the imposition of the maximum sentence for aggravated battery.

6.  The district court erred in the imposition of consecutive sentences.

7.  The verdict of aggravated battery was not unanimous.

We discuss Defendant's assignments of error out of order due to the non-unanimous verdict of aggravated battery in this case. As addressed later herein, we pretermit discussion of Defendant's fifth and sixth assignments of error also because of the non-unanimous verdict.

## DISCUSSION

**Assignment of Error No. 1:** *Sufficiency of the Evidence for Obstruction of Justice Conviction*

Defendant contends that the evidence adduced at trial was insufficient to support his conviction for obstruction of justice.

The United States Supreme Court provided the standard for review of a claim of insufficiency of the evidence in *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979):

> ...the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution. (emphasis in original) (citation omitted).

"Under the *Jackson* standard, the rational credibility determinations of the trier of fact are not to be second guessed by a reviewing court." *State v. Williams,* 11-0414 p. 18 (La. App. 4 Cir. 2/29/12), 85 So.3d 759, 771. In *Musacchio v. United States*, the United States Supreme Court described the basic nature of the *Jackson* standard as follows:

7

> Sufficiency review essentially addresses whether "the government's case was so lacking that it should not have even been submitted to the jury." On sufficiency review, a reviewing court makes a limited inquiry tailored to ensure that a defendant receives the minimum that due process requires: a "meaningful opportunity to defend" against the charge against him and a jury finding of guilt "beyond a reasonable doubt."

577 U.S. 237, 243, 136 S.Ct. 709, 715, 193 L.Ed.2d 639 (2016) (citations omitted).

Conflicting statements as to factual matters is a question of weight of the evidence, not sufficiency. *State v. Jones,* 537 So.2d 1244, 1249 (La. App. 4th Cir. 1989). Such a determination rests solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witness. *Id.* A trier of fact's determination as to the credibility of a witness is a question of fact entitled to great weight, and its determination will not be disturbed unless it is clearly contrary to the evidence. *State v. Vessell,* 450 So.2d 938, 943 (La. 1984); *State v. Wells*, 10-1338, p. 5 (La. App. 4 Cir. 3/30/11), 64 So.3d 303, 306. "The testimony of a single witness, if believed by the trier of fact, is sufficient to support a conviction." *Id.*

La. R.S. 15:438 provides that the "rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." The finder of fact must determine, from facts gleaned from direct evidence and inferred from circumstantial evidence, considering the relative strength and weakness of each inference and finding, whether this body of preliminary facts excludes every reasonable hypothesis of innocence. *State v. Dukes,* 19-0172, p. 9 (La. App. 4 Cir. 10/2/19), 281 So.3d 745, 753; *State v. Rose,* 05-0396, p. 2 (La. App. 4 Cir. 4/13/07), 955 So.2d 270, 272. Further, in *State v. Davis,* 92-1623 (La. 5/23/94), 637 So.2d 1012, 1020, the Louisiana Supreme Court held:

In circumstantial evidence cases, this court does not determine whether another possible hypothesis suggested by a defendant could afford an exculpatory explanation of the events. Rather, this court, evaluating the evidence in the light most favorable to the prosecution, determines whether the possible alternative hypothesis is sufficiently **reasonable** that a rational juror could not have found proof of guilt beyond a reasonable doubt under *Jackson v. Virginia*. (emphasis in original.)

"The requirement that jurors reasonably reject the hypothesis of innocence advanced by the defendant in a case of circumstantial evidence presupposes that a rational rejection of that hypothesis is based on the evidence presented, not mere speculation." *State v. Hoang,* 17-0100, p. 7 (La. 3/26/19), 282 So.3d 189, 194 (citing *State v. Schwander*, 345 So.2d 1173, 1175 (La. 1977)).

La. R.S. 14:130.1 provides that the crime of obstruction of justice, when committed with the knowledge that such act may affect a criminal proceeding, includes "[t]ampering with evidence with the specific intent of distorting the results of any criminal investigation or proceeding which may reasonably prove relevant to a criminal investigation or proceeding." La. R.S. 14:130.1(A)(1). This provision further states that "[t]ampering with evidence shall include the intentional alteration, movement, removal, or addition of any object or substance ... [a]t the location of any incident which the perpetrator knows or has good reason to believe will be the subject of any investigation by state, local, or United States law enforcement officers." *Id.* Thus, the State was required to prove beyond a reasonable doubt that Defendant intentionally altered, moved, or removed evidence from a location he had reason to know would be the subject of investigation, with the specific intent of distorting the investigation's results.

"Specific intent" is the state of mind that exists when circumstances indicate the offender actively desires prescribed criminal consequences to follow his act. La. R.S. 14:10(1). Specific intent need not be proven as fact but may be inferred from the circumstances of the transaction and the actions of defendant. *State v. Everett,* 11-0714, p. 14 (La. App. 4 Cir. 6/13/12), 96 So.3d 605, 619.

In his statement to police, Defendant admitted to fleeing the scene with the gun he used to shoot Martin and Joseph, then later disposing of the gun, stating that he gave it "to a guy named Laru." Defendant's action in this regard was significant. Indeed, it shows that Defendant tampered with evidence with the specific intent of distorting a murder investigation.

Viewing the evidence, specifically, the undisputed fact that Defendant fled the scene with his weapon and later disposed of same, in the light most favorable to the prosecution, it is clear that a rational trier of fact could have found, beyond a reasonable doubt, that Defendant obstructed justice by tampering with evidence with the specific intent of distorting the results of the pertinent criminal investigation. *See State v. Dorsey,* 20-0029, p. 20 (La. App. 4 Cir. 12/9/20), 312 So.3d 652, 665, *writ denied,* 21-00055 (La. 4/20/21), 313 So.3d 1255 ("Defendant put forth no hypothesis of innocence equivalent to the hypothesis of guilt advanced by the state. Thus, viewing the evidence in a light most favorable to the prosecution, a rational juror could have found that Defendant removed the murder weapon from the crime scene with the intent to avoid detection as the shooter in a subsequent criminal investigation."); *State v. Powell,* 15-0218, p. 11 (La. App. 4 Cir. 10/28/15), 179 So.3d 721, 728 (removal of weapon from the scene of the shooting sufficient to support obstruction of justice conviction).

Defendant argues that the jury acted irrationally in finding Defendant guilty of obstruction of justice since it rendered a not guilty verdict on the charge of second degree murder and, according to Defendant, "the State would have to prove that Dwight Harvey was responsible for the death of Aaron Martin, before one can conclude that Harvey somehow obstructed justice in the investigation of that death." Defendant's argument is without merit. As the Louisiana Supreme Court observed in *State v. Quinn,* 19-00647, p. 9 (La. 9/1/20), --- So.3d ---, ---, 2020 WL 5406137, *4 (per curiam), *cert. denied,* --- U.S. ---, 141 S.Ct. 1406, 209 L.Ed.2d 139 (2021):

> One can be found guilty of obstructing a murder investigation although the investigation does not ultimately result in a conviction for murder…. *See State v. McKnight,* 98-1799, pp. 13-14 (La. App. 1 Cir. 6/25/99), 739 So.2d 343, 352-353, *writ denied,* 99-2226 (La. 2/25/00), 755 So.2d 247. To find otherwise would be to reward those who more successfully obstruct justice while punishing those who obstruct with less success.

**Assignment of Error No. 2: *Motion for New Trial***

Defendant contends that the verdicts of guilty of obstruction of justice and aggravated battery are contrary to the law and evidence and that the district court therefore erred in denying his motion for new trial. Because the evidence was sufficient to prove beyond a reasonable doubt that Defendant obstructed justice, we find that the district court did not err in denying Defendant's motion for new trial as it relates to his conviction for obstruction of justice. Our disposition of Defendant's seventh assignment of error (non-unanimous jury verdict for aggravated battery) remanding the matter to the district court renders moot his assignment of error that the district court erred in denying his motion for new trial as it relates to his conviction for aggravated battery.

11

**Assignment of Error No. 3:** *Sufficiency of the Evidence for Aggravated Battery Conviction*[8]

Aggravated battery is a battery committed with a dangerous weapon. La. R.S. 14:34(A). A battery is defined in pertinent part by La. R.S. 14:33 as "the intentional use of force or violence upon the person of another." To convict a defendant of aggravated battery the State must prove that: (1) the defendant intentionally used force or violence against the victim; (2) the force or violence was inflicted with a dangerous weapon; and (3) the dangerous weapon was used in a manner calculated or likely to cause death or great bodily harm. *State v. Dussett*, 13-0116, p. 7 (La. App. 4 Cir. 10/2/13), 126 So.3d 593, 598 (citing *State v. Wix*, 02-1493, p. 9 (La. App. 4 Cir. 1/15/03), 838 So.2d 41, 47, and *State v. Rainey*, 98-436, p. 10 (La. App. 5 Cir. 11/25/98), 722 So.2d 1097, 1102)).

Defendant contends that the fact that the jury found Defendant not guilty of attempted second degree murder, which is a specific intent crime,[9] necessarily means that "the jury must have concluded that [Defendant] lacked specific intent to kill but that he committed a battery with a dangerous weapon." In support of this argument, Defendant notes the testimony of Tamara Joseph, Joseph's sister, that she was unaware of any "beef" Defendant had with her brother.

---

[8] This Court has held that when an appellant argues both insufficient evidence to support a conviction and an unconstitutional verdict based on non-unanimous jury votes under *Ramos v. Louisiana*, the Court should address the appellant's insufficiency of evidence argument first. *State v. Robinson*, 21-0254 (La. App. 4 Cir. 2/18/22), p. 23, --- So.3d ---, ---, 2022 WL 500113, *11 (citing *Dorsey*, 20-0029, pp. 5-6, 312 So.3d at 657; *State v. Hunter*, 19-0901, p. 1 (La. App. 4 Cir. 5/27/20), --- So.3d ---, --- n. 2, 2020 WL 2751914, *1 ). As the Louisiana Supreme Court has explained, "[t]he reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under *Hudson v. Louisiana*, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981). Such an acquittal would necessarily prevent any retrial." *See Hunter*, 19-0901, p. 1, --- So.3d ---, --- n. 2, 2020 WL 2751914, *1 (citations omitted).

[9] *See* La. R.S. 14:27; La. R.S. 14:30.1; *see also State v. Johnson*, 08-1488, p. 9 (La. App. 4 Cir. 2/10/10), 33 So.3d 328, 334.

Aggravated battery is a general intent crime, meaning that the State need only prove the offender must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act. *State v. Stukes*, 08-1217, p. 13 (La. App. 4 Cir. 9/9/09), 19 So.3d 1233, 1242; *Wix,* 02-1493, p. 9, 838 So.2d at 47. In general intent crimes, criminal intent necessary to sustain a conviction is shown by the very doing of the acts which have been declared criminal. *State v. Howard*, 94-0023 (La. 6/3/94), 638 So.2d 216, 217 (per curiam) (citation omitted); *State v. Gaubert*, 15-0774, p. 9 (La. App. 4 Cir. 12/9/15), 179 So.3d 982, 988 (citations omitted). Stated differently, "once the defendant voluntarily commits the proscribed act, general criminal intent may be presumed." *Gaubert*, 15-0774, p. 9, 179 So.3d at 989 (citation omitted). "[I]f a statute has made it criminal to do any act under particular circumstances, the party voluntarily doing that act is chargeable with the general criminal intent of committing the act in question." *Gaubert*, 15-0774, pp. 9-10, 179 So.3d at 989 (citation omitted). Defendant's voluntary act of firing the gun in the direction of Joseph was sufficient to satisfy the general intent element. *See State v. Weathersby,* 13-0258, pp. 13-14, 18-19 (La. App. 4 Cir. 4/16/14), 140 So.3d 260, 269, 271-72 (sufficient evidence existed to support aggravated battery conviction despite defendant's claim that he was not trying to kill or harm anyone, but was trying to break up a fight when he fired into a crowd).

Defendant further argues that his acquittal "for Second Degree Murder mandates a Judgment of Acquittal for the crime of Aggravated Battery" since "[t]he two verdicts are inconsistent with each other and with the facts adduced at trial." Defendant asserts that by finding Defendant not guilty of second degree murder, the jury concluded that the shooting of Martin was either accidental or

justified as self-defense and that if the shooting was accidental or justified, the jury could not have rationally concluded that Defendant "adverted to the proscribed [sic] criminal consequences to have resulted from his [actions], as [they] appl[y] to [Joseph]."

The second degree murder charge, on which Defendant was acquitted, related to Defendant's alleged actions against Martin. However, Defendant's aggravated battery conviction was a separate and distinct crime related to Defendant's actions against Joseph. It would not have been irrational for the jury to believe that Defendant shot Martin accidentally or in self-defense, awakening Joseph, and then turned, looked at Joseph, and shot him intentionally before fleeing the scene.

Thus, viewing the evidence in the light most favorable to the prosecution, it is clear that a rational trier of fact could have found, beyond a reasonable doubt, that Defendant was guilty of aggravated battery. Defendant's claim that the jury "acted in an irrational fashion" is without merit.

**Assignment of Error No. 4:** *Excessive Sentence for Obstruction of Justice*

Pursuant to La. R.S. 14:130.1(B)(1), whoever commits the crime of obstruction of justice, when the obstruction of justice involves a criminal proceeding in which a sentence of death or life imprisonment may be imposed, shall be imprisoned for not more than forty years at hard labor. In the case *sub judice,* Defendant was convicted of obstructing justice involving a second degree murder investigation or proceeding. As the punishment for second degree murder is life imprisonment, his conviction for obstruction of justice in connection with a second degree murder investigation provided for a maximum sentence of forty years. *State v. DeGruy,* 20-0290 (La. App. 4 Cir. 10/29/20), 307 So.3d 258

(affirming forty-year sentence for conviction for obstruction of justice relating to investigation of second degree murder).

Defendant challenges, as a violation of the Eighth Amendment, his sentence to the maximum forty years imprisonment for obstruction of justice as unconstitutionally excessive. Defendant further complains that at his sentencing hearing, the trial judge failed to provide a factual basis for imposing the maximum sentence and recite the sentencing guidelines, pursuant to La. C.Cr.P. art. 894.1.

Our review of the record shows that Defendant did not file a motion to reconsider sentence. Defendant did orally object to the sentence, but failed to set forth any grounds to support his objection. This Court has held that an oral objection made at sentencing, even one stating no ground, is sufficient to preserve for review the bare ground of excessiveness. *See State v. Jefferson,* 02-1159, p. 7 (La. App. 4 Cir. 12/4/02), 834 So.2d 572, 576 (citations omitted).

Under both the Eighth Amendment of the United States Constitution and Article I, § 20 of the Louisiana Constitution, the imposition of excessive and cruel punishments are prohibited. *State v. Wilson*, 14-1267, p. 23 (La. App. 4 Cir. 4/29/15), 165 So.3d 1150, 1165. "The excessiveness of a sentence is a question of law, and a reviewing court will not set aside a sentence [for excessiveness] absent a manifest abuse of discretion by the trial [judge]." *State v. Alridge*, 17-0231, p. 39 (La. App. 4 Cir. 5/23/18), 249 So.3d 260, 288 (citation omitted). "The trial judge is afforded wide discretion in determining sentences, and the court of appeal will not set aside a sentence for excessiveness if the record supports the sentence imposed." *State v. Bradley*, 18-0734, p. 8 (La. App. 4 Cir. 5/15/19), 272 So.3d 94, 99-100 (quoting *State v. Williams*, 15-0866, pp. 12-13 (La. App. 4 Cir. 1/20/16), 186 So.3d 242, 250). A sentence within the applicable statutory range can amount to

unconstitutional excessiveness if the reviewing court determines that the sentence does not serve to complete the acceptable goals of punishment, constitutes purposeful imposition of pain and suffering, and is disproportionate to the severity of the offense committed. *See State v. Kennon*, 19-0998, p. 10 (La. 9/1/20), 2020 WL 5405710, * 5, --- So.3d ---, --- (citing *State v. Dorthey*, 623 So.2d 1276, 1280 (La. 1993); *State v. Johnson*, 97-1906 (La. 3/4/98), 709 So.2d 672, 674). Thus, "[t]he relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate." *State v. Mathieu*, 18-964, p. 4 (La. App. 3 Cir. 11/6/19), 283 So.3d 1041, 1045 (citing *State v. Cook*, 95-2784, p. 3 (La. 5/31/96), 674 So.2d 957, 959).

In the case *sub judice*, after reviewing the record and applicable law, we find that based on the egregious nature of the underlying crime and the steps taken by Defendant in an attempt to thwart the NOPD's investigation, the district court did not abuse its broad sentencing discretion in imposing the maximum sentence for obstruction of justice.

As a comparison, we examined similar Louisiana cases where the maximum sentence was imposed for obstruction of justice. In *State v. Duckett*, 19-0319 (La. App. 4 Cir. 12/18/19), 288 So.3d 167, this Court affirmed the district court's imposition of the maximum forty year sentence for obstruction of justice to the underlying crime of attempted second degree murder where the defendant intentionally attempted to derail the investigation by blaming someone else for the crime. Likewise, in *State v. Royal*, 03-439 (La. App. 5 Cir. 9/30/03), 857 So.2d 1167, the reviewing court affirmed a forty year maximum sentence for obstruction of justice against a defendant that disposed of and threw the murder weapon into the river after committing second degree murder. In *State v. Roberson*, 40,809 (La.

16

App. 2 Cir. 4/19/06), 929 So.2d 789, the reviewing court upheld a maximum forty year sentence for obstruction of justice for a defendant convicted of second degree murder where the defendant tampered with evidence relevant to the murder investigation.

Defendant, in challenging his forty-year sentence, makes much of the fact that he was acquitted on the charge of second degree murder. However, it is well-established that a trial court, in sentencing a defendant, may consider other offenses, regardless of whether the defendant was convicted of the offenses, if there is a showing that the defendant did in fact perpetrate the other offenses. *State v. Mitchell*, 21-0488, p. 8 (La. App. 4 Cir. 12/15/21), 334 So.3d 449, 454 (citations omitted); *see also State v. Berry*, 630 So.2d 1330, 1334-36 (La. App. 4th Cir. 1993) (trial court could properly consider evidence adduced in connection with offenses for which defendant was acquitted); *State v. Perkins*, 568 So.2d 610, 612 (La. App. 4th Cir. 1990) (court may properly consider prior arrests and police reports in sentencing defendant). In *DeGruy,* 20-0290, p. 9, 307 So.3d at 265, a case where the defendant's second degree murder conviction was not unanimous and, as such, was vacated pursuant to *Ramos v. Louisiana*, this Court noted "the egregious nature of the underlying crime" in upholding the defendant's forty-year sentence in connection with his obstruction of justice conviction. Thus, in imposing the maximum forty-year sentence, the district court could properly take note of the evidence adduced at trial linking Defendant to the second degree murder charge, though Defendant was not convicted of said charge.

Consequently, we find that the sentence for obstruction of justice imposed for Defendant is not a purposeful imposition of pain and suffering or

disproportionate to the severity of the offense he committed. Defendant's maximum sentence is not unconstitutionally excessive.

**Assignment of Error No. 7:** *Non-Unanimous Jury Verdict*

In *Ramos v. Louisiana*, the United States Supreme Court held that jury verdicts in state felony trials must be unanimous. Thus, per *Ramos*, a non-unanimous jury verdict in a state felony trial is unconstitutional. The *Ramos* Court further noted that its ruling applied to those defendants convicted of felonies by non-unanimous verdicts whose cases are still pending on direct appeal. *Ramos*, 140 S.Ct. at 1406. Thus, where the defendant's conviction was not final when *Ramos* was decided, the holding of *Ramos* applies. *State v. Cohen*, 19-00949, p. 2 (La. 1/27/21), 315 So.3d 202, 203 (per curiam) (wherein the court observed that the defendant's appeal "was pending on direct review when *Ramos v. Louisiana* was decided, and therefore the holding of *Ramos* applies") (citing *Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987)). *See also Schriro v. Summerlin*, 542 U.S. 348, 351, 124 S.Ct. 2519, 2522, 159 L.Ed.2d 442 (2004) (observing that "[w]hen a decision of [the United States Supreme Court] results in a 'new rule,' that rule applies to all criminal cases still pending on direct review").

Defendant was found guilty of aggravated battery by a non-unanimous verdict.[10] As Defendant's case is pending on direct review, we are bound by the United States Supreme Court's decision in *Ramos*. Therefore, we vacate the conviction and sentence for aggravated battery and remand this matter to the district court for further proceedings.

---

[10] The transcript does not reflect that the jurors were polled, and the polling slips have not been provided to this Court. However, Defendant represents that the polling slips have been located and that, with respect to the aggravated battery verdict, the verdict was eleven to one. *See* Defendant's brief, p. 28. Additionally, the State concedes that the verdict of guilty on the charge of aggravated battery was not unanimous. *See* State's brief, p. 13. We note that no claim is made in this appeal that the verdict on the charge of obstruction of justice was not unanimous.

**CONCLUSION**

Based on the foregoing, we affirm the conviction and sentence for obstruction of justice; vacate the conviction and sentence for aggravated burglary; and remand to the district court for further proceedings.

**CONVICTIONS AND SENTENCES AFFIRMED IN PART; VACATED IN PART; REMANDED**