MADELEINE M. LANDRIEU, Judge.
hDevonte Dussett was charged by bill of information with one count of illegal use of a weapon by discharging a firearm during the commission of a crime of violence, a violation of Louisiana Revised Statute 14:94(F). Following a judge trial, Mr. Dussett was found guilty as charged. He was sentenced to ten years at hard labor and ordered to complete the youth offenders program. Mr. Dussett raised one assignment of error in this appeal: that the evidence was insufficient to sustain his conviction. For the reasons that follow, we affirm his conviction and sentence.

*596
FACTS

On the evening of September 20, 2011, Mark Argeyo, Russell Argeyo (Mark’s father), and Rashad Walker (Mark’s cousin) were on the porch of a residence located at 1334 Bartholomew Street when they observed a group of individuals, including the defendant, on the corner approximately fifteen to twenty feet away.[1] The group on the corner began shooting at the house' and then fled.
|2Mark noticed the group on the corner and recognized one of the men on the bikes as “Tigger.” Mark knew and recognized Tigger because Tigger had gotten in a fight with his younger brother a few months back. Mark said that when Tigger saw Rashad, he stopped, jumped off his bike, and pulled out a gun. Russell (Mark’s father) was holding Mark’s five month old daughter on the porch at this point in time. Mark told his father that “they” were about to start shooting, grabbed his daughter and handed her to her mother inside the home. Rashad ran inside the residence. Mark turned back to the screen door leading to the porch to try and get his father to come inside. Mark testified that he was “halfway inside” the house and saw Tigger fire his gun towards them when he was “bending and screaming trying to get [his father] to come inside.” Mark said that his father remained on the porch, however, and after the shooting ceased, chased after the group in his truck.
Mark told the police Tigger’s name and that Tigger was wearing a green shirt and a black hat. The next day Detective Michael Augustus presented him with a photographic line-up and he identified the defendant, Devonte Dussett, as the man on the corner who shot at them. He also identified Mr. Dussett at trial as “Tigger” and as the person that shot at them on the night of the incident.
Russell testified that on the evening of the incident he was at the Bartholomew Street residence to visit his infant granddaughter. He stated he was sitting on the porch playing with her when Mark told him to hand him the baby because the guys on the corner were about to start shooting. After Mark took the baby, Russell stood up and told the young men “y’all don’t need to be doing this.” Russell testified that one of individuals shouted to take the baby inside and after Mark did so, “one of them started shooting.” Russell stated that he was initially |3standing up when the shooting began, but ducked behind a pillar when he believed everyone was inside the home. Russell testified that Mark was not on the porch when the shooting occurred as it began after the baby was inside the residence. Subsequent to the shooting, Russell jumped in his truck to find the young men. Russell never caught them, but was able to flag down a police officer on Urquhart Street. Russell testified that he was injured in the shooting when the bullets grazed his legs and that he was taken to Tulane Hospital for treatment.
Russell described the shooter to the police as wearing a dark colored shirt, having a low haircut, and not wearing a hat. He stated that a few days later, Det. Augustus presented him with a photographic lineup and that he identified another individual as the shooter, not Mr. Dussett. Russell testified, however, that at the time he made this identification he was nervous. At trial, Russell did identify Mr. Dussett as the shooter. Russell stated he was “positive” that Mr. Dussett was the person who fired the gun at him on September 20, 2011, *597 despite his earlier identification of a filler photograph.
Officer Nyketi Addison of the New Orleans Police Department responded to a call of a shooting in the 1300 block of Bartholomew Street. As she was canvassing the area, she was flagged down by Russell at France and Urquhart Streets. He related what happened and she observed that he had suffered a gunshot wound to his left leg. She contacted EMS to transport him to a hospital for his injury and relocated to the scene of the shooting. There she observed gunshot holes through the window pane and the front door of the residence as well as a “projectile” on the front porch.
Det. Michael Augustus stated that he conducted an investigation at the crime scene and discovered two bullet fragments on the front porch, observed a hole inj4the window pane and a hole in the living room wall. Det. Augustus interviewed Mark and Rashad as witnesses to the shooting. These interviews produced a description of the shooter and a first name. Det. Augustus later learned through the course of his investigations that the suspect’s name was Devonte Dussett. Det. Augustus also canvassed the area for witnesses and spoke with neighbors who heard shots but did not see anything. Det. Augustus obtained a search warrant for Mr. Dussett’s home, but failed to find a gun or related items while executing the search.
He learned that Russell was the only victim of the incident and went to the hospital to interview him. While there, he observed a bruise on one of Russell’s legs and a laceration on the other due to bullet fragments from the shooting.
Thereafter, Det. Augustus compiled three photographic line-ups. Det. Augustus presented the first line-up to Mark on September 21, 2011, the day after the incident. Mark positively identified Mr. Dus-sett as the shooter. Det. Augustus presented the second line-up to Rashad, who was unable make identification. Det. Augustus presented Russell with the third line-up on September 27, 2011; however, he selected a photograph of a “filler,” and did not identify Mr. Dussett. Based on Mark’s positive identification of Mr. Dus-sett, Det. Augustus applied for an arrest warrant.

ERRORS PATENT

A review of the record for errors patent reveals that the trial court imposed an illegally lenient sentence by failing to specify that Mr. Dussett’s sentence be served without benefit of parole, probation, or suspension of sentence. Louisiana Revised Statute 14:94(F) provides that a person convicted of illegal use of weapons by discharging a firearm while committing or attempting to commit a | Bcrime of violence shall be imprisoned at hard labor for ten to twenty years, without benefit of parole, probation, or suspension of sentence. The trial court sentenced Mr. Dussett to the statutory minimum of ten years, with credit for time served, but failed to specify that Mr. Dussett’s sentence be served without benefit of parole, probation, or suspension of sentence. Accordingly, the trial court erred in failing to impose the sentencing restrictions.
However, when a criminal statute requires that all or portion of a sentence be served without the benefit of parole, probation, or suspension of sentence, Louisiana Revised Statute 15:301.1 self-activates the correction and eliminates the need to remand for a ministerial correction. La. R.S. 15:301.1(A); State v. Williams, 2000-1725, pp. 11-12, 14 (La.11/28/01), 800 So.2d 790, 798-799, 801. Thus, Mr. Dussett’s sentence is amended to reflect that it shall be served without *598 benefit of parole, probation, or suspension of sentence.

DISCUSSION

As his sole assignment of error, Mr. Dussett contends that the evidence is insufficient to uphold his conviction.
The standard of review for the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. State v. McMillian, 2010-0812, pp. 5-8 (La.App. 4 Cir. 5/18/11), 65 So.3d 801, 804-05, reh’g denied (7/13/11); Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The reviewing court is not permitted to consider just the evidence most favorable to the prosecution but must consider the record as a whole. State v. Mussall, 523 So.2d 1305, 1308 (La.1988). “If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view 16of all the evidence most favorable to the prosecution must be adopted.” Id., 523 So.2d at 1309. “A factfinder’s credibility decision should not be disturbed unless it is clearly contrary to the evidence.” State v. Huckabay, 2000-1082, p. 33 (La.App. 4 Cir. 2/6/02), 809 So.2d 1093, 1111.
In this case, Mr. Dussett was convicted of illegal use of weapons under Louisiana Revised Statute 14:94(F) which prohibits the intentional discharging of a firearm when it is foreseeable that it may result in death or great bodily harm to a human being during the attempt or commission of a crime of violence. To convict a defendant for illegal use of a weapon during a crime of violence, the State must prove: (1) that the defendant intentionally, or through criminal negligence, discharged a firearm, (2) that it was foreseeable that it may result in death or great bodily harm to a human being, and (3) that the defendant did so while committing, attempting to commit, conspiring to commit or otherwise trying to get someone else to commit a crime of violence. State v. Brown, 42,188, pp. 39-40 (La.App. 2 Cir. 9/26/07), 966 So.2d 727, 755-756.
The bill of information did not specify which crime of violence Mr. Dus-sett committed. However, in opening statements, the State alleged that Mr. Dussett discharged the firearm during the commission of an aggravated battery and attempted second degree murder. The State argued that Mr. Dussett knowingly and recklessly discharged a firearm while in the commission of “an aggravated battery on [ ] Russell Argeyo and attempted] second degree murder of Rashad Walker and ... Mark Argeyo.” Louisiana Revised Statute 14:2(B) lists aggravated battery and attempted second degree murder as crimes of violence. Because only one violent crime is needed to violate Louisiana Revised Statute 14:94(F), this opinion will only address the aggravated battery against Russell.
|7Aggravated battery is defined as “a battery committed with a dangerous weapon,” and a battery is defined as “the intentional use of force or violence upon the person of another.” La. R.S. 14:34(A); La. R.S. 14:33. To support a conviction of aggravated battery the State must prove three elements: (1) that the defendant intentionally used force or violence against the victim, (2) that the force or violence was inflicted with a dangerous weapon, and (3) that the dangerous weapon was used in a manner likely to cause death or great bodily harm. State v. Wix, 2002-1493, p. 9 (La.App. 4 Cir. 1/15/03), 838 So.2d 41, 47 (citing State v. Rainey, 98-436, p. 10 (La.App. 5 Cir. 11/25/98), 722 So.2d 1097, 1102).
*599 Mr. Dussett does not assert that the State failed to establish any of essential statutory elements of his conviction. Rather, Mr. Dussett contends that the State failed to prove that he was the individual who fired the weapon and that the State failed to produce physical evidence linking him to the crime.
 When the key issue is the defendant’s identity as the perpetrator, the State is required to negate any reasonable probability of misidentification. State v. Hughes, 2005-0992, pp. 5-6 (La.11/29/06), 943 So.2d 1047, 1051 (citing State v. Weary, 2003-3067 (La.4/24/06), 931 So.2d 297; State v. Neal, 00-0674 (La.6/29/01), 796 So.2d 649). “Positive identification by only one witness is sufficient to support a conviction.” Hughes, 2005-0992, p. 6, 943 So.2d at 1051 (citing Weary, 2003-3067 at p. 18, 931 So.2d at 311; Neal, 2000-0674 at p. 11, 796 So.2d at 658; State v. Mussall, 523 So.2d 1305, 1311 (La.1988)). “Appellate courts will not second-guess the credibility determinations of the fact finder beyond the constitutional standard of sufficiency.” State v. Dorsey, 2010-0216, p. 43 (La.9/7/11), 74 So.3d 603, 633-634, reh’g denied (10/21/11), cert. denied, — U.S. -, 132 S.Ct. 859, 182 L.Ed.2d 658 (2012) (citing State v. Davis, 2002-1043, p. 3 (La.6/27/03); 848 So.2d 557, 559).
Mr. Dussett suggests that Mark’s identification of him is unreliable because at the time the shooting occurred Mark was inside the residence and therefore could not see who was shooting. Mr. Dussett asserts that Mark testified that he was carrying his infant daughter with his back to the street when he heard gun shots and that Russell testified that Mark was not on the porch at the time of the shooting.
Factors to consider in reviewing the reliability of an identification are set forth in Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977): (1) the opportunity of the witness to view the assailant at the time of the crime; (2) the witness’s degree of attention; (3) the accuracy of the witness’s prior description of the assailant; (4) the level of certainty demonstrated by the witness; and (5) the length of time between the crime and the confrontation. State v. Stewart, 2004-2219, p. 6 (La.App. 4 Cir. 6/29/05), 909 So.2d 636, 639.
The record indicates that although Mark handed his daughter to his girlfriend inside the residence, he specifically stated that he was “only halfway inside” the residence when the shooting occurred and was actively trying to get his father to come inside. Furthermore, an application of the aforementioned Manson factors demonstrates that Mark’s identification of Mr. Dussett is reliable. Mark expressly stated that before the shooting began he saw Mr. Dussett with a gun and that he saw Mr. Dussett fire the gun at them. Mark also knew who Mr. Dussett was prior to the incident, gave the officers a description of him including the color shirt he was wearing at the time of the incident, and identified Mr. Dussett from the photographic lineup. Moreover, at trial, Mark confirmed his earlier identification |9of Mr. Dussett as the shooter. Because Mark had the opportunity to view Mr. Dussett before and during the shooting, was able to identify him a short time after the incident, and demonstrated a high level of certainly in his identification of Mr. Dus-sett, a rational trier of fact could find Mark’s identification of Mr. Dussett as credible.
Mr. Dussett next argues that the evidence is insufficient because Russell and Mark’s descriptions of the shooter did not match and because Russell failed to positively identify Mr. Dussett in the pho *600 tographic line-up. Mr. Dussett is correct that at trial Russell testified that the shooter was wearing dark clothes and was not wearing a hat, whereas Mark testified that Mr. Dussett was wearing a green shirt and a hat. However, “when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of credibility of the witness, the matter is one of the weight of the evidence, not its sufficiency.” State v. Ferdinand, 2012-0283, p. 6 (La.App. 4 Cir. 1/30/13), 107 So.3d 1266, 1270 (citing State v. Allen, 94-1895 (La.App. 4 Cir. 9/15/95), 661 So.2d 1078). “The trier of fact determines the weight to be given the evidence presented. It is not the function of an appellate court to assess credibility or reweigh the evidence.” Id., (citing State v. Helou, 2002-2302, p. 5 (La.10/23/03), 857 So.2d 1024, 1027). The trial judge as the trier of fact was free to accept Mark’s description of Mr. Dussett, who was previously acquainted with Mr. Dussett, over Russell’s, who had never seen Mr. Dussett before the shooting incident. Moreover, the disparity between Mark and Russell’s testimony does not appear to amount to irreconcilable conflict such that it would warrant this Court to disturb the trial judge’s factual findings.
|inIt is settled that a witness’ subsequent in-court identification does not violate a defendant’s due process rights where it has a source independent of the out-of-court identification. State v. Bland, 310 So.2d 622, 624 (La.1975). A determination of whether a witness’ in-court identification is based on an independent source involves three factors: (1) the prior acquaintance of the witness with the accused; (2) the length of time the witness observed the perpetrator before, during and after the offense; and (3) the circumstances in which the observation was made, including illumination at the scene, the physical capacities of the witness and the emotional state of the witness at the time of the observation. State v. Newman, 283 So.2d 756, 759 (La.1973).
Applying the factors enumerated in Newman, Russell’s in-court identification of the Mr. Dussett was in fact based on an independent source. The testimony indicates that Russell had more than sufficient time to view Mr. Dussett prior to and during the shooting. Russell was able to call out to the group not to shoot. At most, Mr. Dussett was fifteen to twenty feet away from Russell and the testimony reflects that Mr. Dussett approached even closer than that. The record is devoid of any indication that Russell did not have the physical capacity to observe Mr. Dus-sett or that his emotional state before the shooting was such that it impaired his observation of Mr. Dussett.
Although Russell selected another individual in the photographic line-up as the perpetrator, he explained that he “was really kind of nervous and aggravated about the whole thing” because he had never been through an incident like that before. Further, Russell was able to identify Mr. Dussett in court as the individual who fired the gun. In fact, Russell testified that there was no doubt in his mind that Mr. Dussett was the shooter on the evening of September 20, 2011. Russell’s 1 n subsequent in-court identification combined with Mark’s positive identification of Mr. Dussett both in the photographic lineup and at trial sufficiently negates any reasonable probability of misidentification of Mr. Dussett.
At trial, the trial judge considered testimony from two eyewitnesses and two responding officers and the crime lab report. The eyewitnesses’ testimony and the physical evidence support the conclusion that Mr. Dussett shot at the men on the porch. The officers observed gunshot *601 holes and/or strike marks through the window pane, on the front door, and in the living room of the residence and discovered bullet fragments on the front porch of the Bartholomew Street home. The crime lab report confirms the officers’ observations at the crime scene. The record further provides that Russell sustained injuries as a result of bullet fragments hitting his legs during the shooting. This testimony is sufficient to show that Mr. Dus-sett intentionally discharged the firearm and that by discharging the firearm towards the house it was foreseeable that it would cause death or great bodily harm.
Finally, Mr. Dussett claims that the State failed to present sufficient evidence to support his conviction because a search of his home failed to provide physical evidence linking him to the crime. However, this Court has observed that “[w]hile there [is] no physical evidence to link [the] Defendant to the crime, the testimony of one witness, if believed by the trier of fact, is sufficient support for the requisite factual conclusion.” State v. Marshall, 99-2176, p. 12 (La.App. 4 Cir. 8/30/00), 774 So.2d 244, 252. Two people positively identified Mr. Dussett at trial as the person who discharged his firearm. The record does not disclose any internal contradiction or irreconcilable conflict with physical evidence with regard to the identification of Mr. Dussett.
112Here, viewing the evidence in light most favorable to the prosecution, it appears that a rational trier of fact could have found that Mr. Dussett was the individual who discharged the firearm during the commission of an aggravated battery and that he did so intentionally, in a manner likely to cause death or great bodily harm. Mr. Dussett’s assignment of error has no merit.

CONCLUSION

The evidence presented is sufficient for a reasonable trier of fact to conclude that Mr. Dussett illegally discharged a firearm during the commission of a crime of violence. As such, Mr. Dussett’s conviction is affirmed. Mr. Dussett’s sentence is amended to reflect that it shall be served without benefit of parole, probation, or suspension of sentence, and his sentence is affirmed as amended.
CONVICTION AFFIRMED; SENTENCE AMENDED AND AFFIRMED AS AMENDED.

. Some of the individuals were on bikes and some were walking.