JAMES F. MCKAY III, CHIEF JUDGE
*863 STATEMENT OF CASE
On October 24, 2013, the State charged Jesus Estrada Contreras, a/k/a Simon Cruz Ramirez, a/k/a Oscar Herrera, a/k/a Modesto Fuentes, a/k/a "Migo" (defendant) with three counts of attempted second degree murder, La. R.S. 14:(27)30.1; one count of the illegal discharge of a firearm during a crime of violence, La. R.S. 14:94(F) ; and one count of possession of a firearm by a convicted felon, La. R.S. 14:95.1.
The defendant pled not guilty on all counts at his arraignment on November 7, 2013.[1]
The defendant's motions to suppress the identification and evidence were denied June 20, 2014.
On May 8, 2015, the trial court denied the defendant's Motion to Quash Count 5 of the Bill of Information.
On July 16, 2015, the State filed its Prieur notice.
On March 14, 2016, the trial judge found the defendant competent to proceed.
The case proceeded to trial on September 6, 2016, and concluded on September 8, 2016, with the jury finding the defendant guilty of three counts of attempted manslaughter (counts 1, 2 and 3) and guilty as charged of illegal discharge of a firearm during a crime of violence (count 4) and possession of a firearm by a convicted felon (count 5).
On October 5, 2016, the defendant filed a Motion for Arrest of Judgment and a Motion for Post-Verdict Judgment of Acquittal, or in the alternative, for a New Trial, which were denied November 7, 2016.
On November 14, 2016, the trial court sentenced the defendant to twenty years at hard labor with credit for time served, on each of his attempted manslaughter convictions. On his conviction for illegal discharge of a firearm during a crime of violence, the defendant was sentenced to twenty years without benefit of parole, probation or suspension of sentence. As to the conviction for being a felon in possession of a firearm, the defendant received a twenty-year sentence without benefit of parole, probation or suspension of sentence, plus a $1,000.00 fine. The sentences on all five counts to be served concurrently.
STATEMENT OF FACT
New Orleans Police Department ("NOPD") latent print examiner Officer Joseph Pollard ("Pollard") identified State's Exhibit 1 as a certified copy of the defendant's fingerprints taken on September 4, 2013, bearing the defendant's date of birth October 28, 1971, State Identification Number 002601023 and FBI Number 319397XA1. Next, Officer Pollard identified State's Exhibit 2 as the card containing the defendant's fingerprints taken by Office Pollard prior to the start of this trial. Officer Pollard then produced a certified conviction packet, State's Exhibit 3 in globo, in the defendant's name and aliases, *864 Jesus Estrada Contreras, a/k/a Simon Cruz Ramirez, a/k/a Oscar Herrera, a/k/a Modesto Fuentes, a/k/a "Migo," bearing Georgia State case number 99CR480C, containing a fingerprint card and plea of guilty to involuntary manslaughter signed by the defendant on September 7, 2000. The fingerprint card and the guilty plea record the defendant's date of birth as October 28, 1971.
Officer Pollard compared the fingerprints on State's Exhibit 1 and 2 to the prints contained on State's Exhibit 3 and determined the three sets of fingerprints were identical and belonged to the defendant.
NOPD Communications Officer Nicole Jones testified that she monitored 911 calls and dispatch audio. Every 911 call is recorded, generates an incident recall or brief summary of the purpose of the call and assigned an item number for identification for future investigation.
Detective Mary Colon ("Detective Colon") investigated the June 6, 2013, shooting at a residence in the 2300 block of Touro Street. When Detective Colon arrived on the scene, she learned Trina Tinsley ("Tinsley"), Dwight Griffin ("Griffin") and Carl Williams ("Williams") had been shot. Two bullet fragments and a beer can, from which the shooting suspect had been drinking, were collected by the crime scene technicians. Detective Colon submitted the beer can for DNA testing and the bullet fragments were sent to ballistics for processing. Detective Colon spoke to Tinsley, Griffin and Williams at the scene but was unable to locate the suspect. She also spoke to people who lived in the neighborhood.
Detective Colon relocated to the hospital where she spoke with one of the victims, Tinsley, who related the events surrounding the shooting. Detective Colon presented Tinsley with a confirmation photo of the defendant. She then prepared an arrest warrant for the defendant and a warrant to search 825 Fourth Street. The search of the residence yielded a Ruger handgun and bullets. Detective Colon submitted all of the evidence to Central Evidence and Property and requested ballistics testing on the handgun and bullets. Detective Colon entered the arrest warrant in the National Crime Information Center Systems and later learned that the defendant had been apprehended in Texas.
Sean McElrath, the section head for the firearms unit of the NOPD Crime Lab, testified that comparison testing of the two bullet fragments obtained from the crime scene revealed that those bullets were fired by the same weapon. However, the test bullet McElrath fired from the Ruger handgun retrieved from 835 Fourth Street did not match the bullet fragments from the shooting scene, demonstrating the Ruger was not the weapon used in this shooting.
In 2012, Williams testified that he knew the defendant from purchasing drugs from him. Williams also knew the defendant through his niece, Tinsley. On June 5, 2013, Williams and Tinsley were at his sister's house in Marrero when he received a call from the defendant accusing him of having broken into the defendant's house. Williams denied the accusation and proceeded to the defendant's house on Touro Street to speak with him. When Williams arrived, the defendant was speaking to another person. The conversation made Williams uncomfortable, so he showed the defendant he was unarmed. The defendant and Williams walked to Tinsley's house, which was just a few doors from the defendant's residence, and began to drink, smoke marijuana and use cocaine. Tinsley and Griffin joined in the smoking and drinking. The defendant went to the bathroom and was gone about thirty minutes.
*865 The defendant returned, sat on the sofa and began firing, wounding Williams and Tinsley. When Detective Colon arrived on the scene, Williams did not say he had been shot but he eventually identified the defendant as the shooter.
Griffin testified the defendant shot at him, Tinsley and Williams on June 5th or 6th, 2013, while they were at Tinsley's residence drinking and smoking marijuana. After a few hours, the defendant went to the bathroom. When the defendant returned, he sat on the sofa and continued to drink and smoke with the others. Without warning, the defendant stood up, removed a gun from his pants pocket and began shooting at Williams. After a few shots, the defendant turned the gun in the direction of Griffin and Tinsley, who dropped to the floor and hid behind the bar. Williams kept asking the defendant why he was shooting at them, but the defendant just turned and walked out the door. Griffin told the investigating officers the defendant was the shooter.
Tinsley testified that she, Williams, and Griffin were together on June 5, 2013, in Marrero when she received several calls from the defendant. She would not take the defendant's calls, so he called Williams. Tinsley and Griffin went to her residence at 2325 Touro Street. Williams went to the defendant's house at 2321 Touro Street. Tinsley received a call from Williams asking her to meet him at the defendant's residence, which she and Griffin did. While the trio was at the defendant's residence, Williams raised his shirt to prove to the defendant he was unarmed. At that point, Tinsley and Griffin returned to her residence. Shortly after, Williams called her and asked if he could bring the defendant to her house. When they arrived at Tinsley's house, the defendant sat on the sofa drinking beer, while she, Williams and Griffin stood in the kitchen, smoking and drinking. A few minutes later, the defendant went to the bathroom. When he came back, he sat on the sofa, put down his beer, removed a gun from his pocket and fired five or six times. Tinsley was shot in the arm and fell to the floor. She heard the defendant and Williams fighting. When the noise stopped, the defendant exited through the front door.
Detective Colon visited Tinsley in the hospital where she identified the defendant as the shooter from a confirmation photo shown to her by Detective Colon.
DNA analyst Tayla Pinell ("Pinell") of the Louisiana State Police Crime Laboratory tested a swab sample taken from a beer can retrieved at the shooting scene and two oral reference swabs obtained from the defendant. Pinell's testing of the swabs produced identical DNA profiles, which statistically demonstrated that the chances the DNA profile belonged to anyone other than the defendant was one in 18.4 quintillion of the Southwest Hispanic population.
ERRORS PATENT
A review for errors patent on the face of the record reveals none.
ASSIGNMENT OF ERROR NUMBER 3
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. When the entirety of the evidence both admissible and inadmissible is sufficient to support the conviction, the accused is not entitled to an acquittal, and the reviewing court must review the assignments of error to determine whether the accused is entitled to a new trial. State v. Hearold, 603 So.2d 731, 734 (La. 1992). Thus, although insufficiency of evidence is not the first trial error argued by the defendant, it must be the first considered.
*866 State v. King , 2000-0618, p. 4 (La. App. 4 Cir. 3/7/01), 782 So.2d 654, 658.
When reviewing the sufficiency of the evidence to support a conviction, Louisiana appellate courts apply the standard enunciated in Jackson v. Virginia , 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under this standard, the appellate court must determine that the evidence viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proven beyond a reasonable doubt. State v. Tate , 2001-1658, p. 4 (La. 5/20/03), 851 So.2d 921, 928.
The principal criteria of a Jackson v. Virginia review is rationality. State v. Mussall , 523 So.2d 1305, 1310 (La. 1988). In reviewing the evidence, the whole record must be considered because a rational trier of fact would consider all the evidence, and the actual trier of fact is presumed to have acted rationally until it appears otherwise. Id. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. Id. , State v. Egana , 97-0318, p. 6 (La. App. 4 Cir. 12/3/97), 703 So.2d 223, 228 ; State v. Green , 588 So.2d 757, 758 (La. App. 4th Cir. 1991). It is not the function of the appellate court to assess the credibility of witnesses or reweigh the evidence. State v. Scott , 2012-1603, p. 11 (La. App. 4 Cir. 12/23/13), 131 So.3d 501, 508. Credibility determinations, as well as the weight to be attributed to the evidence, are soundly within the province of the trier of fact. Id. , ( citing State v. Brumfield , 93-2404 (La. App. 4 Cir. 6/15/94), 639 So.2d 312, 316 ). "Moreover, conflicting testimony as to factual matters is a question of weight of the evidence, not sufficiency. Such a determination rests solely with the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness." Id. , ( citing State v. Jones , 537 So.2d 1244, 1249 (La. App. 4th Cir. 1989).) "Absent internal contradiction or irreconcilable conflict with the physical evidence, a single witness' testimony, if believed by the fact finder, is sufficient to support a factual conclusion." State v. De Gruy , 2016-0891, p.11 (La. App. 4 Cir. 4/5/17), 215 So.3d 723, 729-730, writ denied , 2017-0752 (La. 1/9/18), 231 So.3d 652.
Attempted murder, whether first degree or second degree, requires specific intent to kill and the commission of an overt act toward that goal. State v. Bordenave, 93-1682, p. 7-8 (La. App. 4 Cir. 8/23/95), 660 So.2d 1207, 1211. Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow from his act or failure to act. La. R.S. 14:10(1) ; State v. Marshall, 94-1282, p.5 (La. App. 4 Cir. 6/29/95), 657 So.2d 1106, 1108. Specific intent need not be proven as a fact, but may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Maxie, 93-2158, p.11 (La. 4/10/95), 653 So.2d 526, 532.
La. R.S. 14:27 provides in part:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
B. Mere preparation to commit a crime shall not be sufficient to constitute an attempt; but lying in wait with a dangerous weapon with the intent to commit a crime, or searching for the *867 intended victim with a dangerous weapon with the intent to commit a crime, shall be sufficient to constitute an attempt to commit the offense intended.
Manslaughter is a homicide which would be either first or second degree murder, but the killing is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of self-control and cool reflection; or that he had no intent to kill or commit great bodily harm but was engaged in a felony or intentional misdemeanor affecting the person. La. R.S. 14:(27)31.
To convict a defendant for illegal use of a weapon during a crime of violence, the State must prove: (1) that the defendant intentionally, or through criminal negligence, discharged a firearm, (2) that it was foreseeable that it may result in death or great bodily harm to a human being, and (3) that the defendant did so while committing, attempting to commit, conspiring to commit or otherwise trying to get someone else to commit a crime of violence. State v. Dussett , 2013-0116, p. 5 (La. App. 4 Cir. 10/2/13), 126 So.3d 593, 598.
In order to support a conviction for possession of a firearm by a convicted felon the State must prove beyond a reasonable doubt that the defendant: (1) possessed a firearm; (2) was previously convicted of an enumerated felony; (3) possessed the firearm within ten years of the previous conviction and; (4) had the general intent to commit the crime. State v. Fields , 2012-0674, p. 6 (La. App. 4 Cir. 6/19/13), 120 So.3d 309, 315. See also La. R.S. 14:95.1 ; State v. Scott, 2013-0321 (La. App. 4 Cir. 2/26/14), 136 So.3d 383, 389.
In this case, the defendant argues the State failed to meet its burden of proving his identity as the perpetrator of the charged offenses.
When the key issue is the defendant's identity as the perpetrator, the State is required to negate any reasonable probability of misidentification. State v. Hughes, 2005-0992, p. 5-6 (La. 11/29/06), 943 So.2d 1047, 1051. "Positive identification by only one witness is sufficient to support a conviction." Hughes, 2005-0992, p. 6, 943 So.2d at 1051. A victim's or witness's testimony alone is usually sufficient to support the verdict, as appellate courts will not second-guess the credibility determinations of the fact finder beyond the constitutional standard of sufficiency." State v. Dorsey, 2010-0216, p. 43 (La. 9/7/11), 74 So.3d 603, 633-634, reh'g denied (10/21/11), cert. denied, 566 U.S. 930, 132 S.Ct. 1859, 182 L.Ed.2d 658 (2012) (citing State v. Davis, 2002-1043, p. 3 (La. 6/27/03), 848 So.2d 557, 559 ).
The evidence in this case, when viewed in light most favorable to the State, established the defendant's guilt of the offenses beyond a reasonable doubt. The three victims unequivocally identified the defendant, a person they all knew for some time prior to the shooting, as the man who fired his weapon at them. Specific intent to kill has been found to exist when the defendant fired a gun at the victim. State v. Davis, 93-0663 (La. App. 4 Cir. 2/25/94), 633 So.2d 822. The victims herein testified that the defendant was no more than a few feet from them when he began shooting. The defendant's act of shooting the victims at close range clearly was sufficient to support the conviction for attempted second degree murder and necessarily the lesser included offense of attempted manslaughter.[2] Moreover, the evidence *868 proves the defendant possessed a weapon. The victims saw the defendant withdraw the firearm from his pants' pocket. Finally, the State proved the defendant was a convicted felon at the time he carried the gun through the testimony of Officer Joseph Pollard, who proved the defendant's 2000 plea of guilty to involuntary manslaughter in Georgia.[3]
The jury considered all of the evidence and credited the testimony of the State's witnesses. The evidence was sufficient to allow a rational juror to find beyond a reasonable doubt that the defendant was guilty of attempted manslaughter, illegal use of a weapon during a crime of violence and being a felon in possession of a firearm. This assignment has no merit.
ASSIGNMENT OF ERROR NUMBER 1
The defendant claims in this assignment of error that the trial court erred by denying his motion to quash the felon in possession of a firearm charge, La. R.S. 14:95.1. The defendant argues that his conviction in the State of Georgia ("Georgia") for involuntary manslaughter cannot serve as the predicate offense for purposes of La. R.S. 14:95.1 because involuntary manslaughter would not qualify as a crime of violence in Louisiana, see La. R.S. 14:2(B), and Georgia's law of involuntary manslaughter[4] is not subsumed by Louisiana's definition of manslaughter. The defendant's argument is not persuasive.
La. R.S. 14:95.1 provides in pertinent part:
A. It is unlawful for any person who has been convicted of a crime of violence as defined in R.S. 14:2(B) which is a felony or simple burglary, burglary of a pharmacy, burglary of an inhabited dwelling, unauthorized entry of an inhabited dwelling, felony illegal use of weapons or dangerous instrumentalities, manufacture or possession of a delayed action incendiary device, manufacture or possession of a bomb, or possession of a firearm while in the possession of or during the sale or distribution of a controlled dangerous substance, or any violation of the Uniform Controlled Dangerous Substances Law which is a felony, or any crime which is defined as a sex offense in La. R.S. 15:541, or any crime defined as an attempt to commit one of the above-enumerated offenses under the laws of this state, or who has been convicted under the laws of any other state or of the United States or of any foreign government or country of a crime which, if committed in this state, would be one of the above-enumerated crimes, to possess a firearm or carry a concealed weapon.
La. R.S. 14:2(B) provides in part:
In this Code, "crime of violence" means an offense that has, as an element, the *869 use, attempted use, or threatened use of physical force against the person or property of another, and that, by its very nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense or an offense that involves the possession or use of a dangerous weapon. The following enumerated offenses and attempts to commit any of them are included as "crimes of violence" ...
According to the police report filed in conjunction with the defendant's conviction for involuntary manslaughter, the defendant said he killed the Georgia victim in self-defense in a drug deal gone bad. Georgia charged the defendant with murder, which was subsequently reduced to involuntary manslaughter, to which the defendant pled guilty. The facts of the shooting incident in Georgia would support a conviction under Louisiana's definition of manslaughter, La. R.S. 14:31, and qualify as a "crime of violence" pursuant to La. R.S. 14:2(B)(4). The conviction was based upon an "offense that has, as an element, the use, attempted use, or threatened use of physical force against the person or property of another, and that, by its very nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense or an offense that involves the possession or use of a dangerous weapon." Moreover, because the list of crimes enumerated under La. R.S. 14:2(B) is illustrative, not exhaustive, unlisted offenses may be denominated as crimes of violence under the general definition of the term provided by the statute. See State v. Oliphant, 2012-1176, p. 8 (La. 3/19/13), 113 So.3d 165, 170. Considering that aggravated battery, second degree battery and stalking are enumerated as crimes of violence, La. R.S. 14:2(B)(5), (6) and (37), no less so should involuntary manslaughter. This assignment has no merit.
ASSIGNMENT OF ERROR NUMBER 2
The defendant in this assignment of error maintains that the trial court erred by granting the State's Prieur motion, which allowed the State to introduce evidence of the defendant's 1999 conviction for involuntary manslaughter. The defendant complains despite the State's assertion otherwise, the facts of the present case are not so factually similar to the prior case that the prior case was probative of motive, opportunity, intent, plan, and absence of mistake.
The fundamental rule in Louisiana governing the use of evidence of other crimes, wrongs, or acts is not admissible to prove the accused committed the charged crime because he has committed such crimes in the past or to show that the probability that he committed the crimes because he is a person of criminal character. See State v. Garcia , 2009-1578, p. 53 (La. 11/16/12), 108 So.3d 1, 38 ; see also La. C.E. art. 404 A.
The seminal case governing other crimes evidence, Prieur , has been abrogated by the Louisiana Supreme Court in State v. Taylor, 2016-1124, 2016-1183 (La. 12/1/16), 217 So.3d 283. The court reaffirmed the majority of principles set forth in Prieur and its progeny and reiterated that La. C.E. art. 404 B(1) governs the admissibility of other crimes, wrongs, or acts, provided that the prosecution establishes an independent reason for its admission, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake.
Even when the evidence is offered for a purpose allowed under *870 Article 404 B(1), the evidence must have substantial relevance independent from showing the accused's criminal character and is not admissible unless it tends to prove a material fact at issue or to rebut a defendant's defense. See Taylor , at p. 12, 217 So.3d at 293. The prosecution must still provide written notice before trial that it intends to offer prior crimes evidence, and the requirement that the court charge the jury as to the limited purpose of the evidence remains intact. See id. , (citing Garcia , at p. 54, 108 So.3d at 39 ). The trial court as gatekeeper must continue to balance the probative value of the other crimes evidence against its inherently prejudicial effect before the evidence can be admitted. See id. , (citing State v. Henderson , 2012-2422, p. 2 (La. 1/4/13), 107 So.3d 566, 567-68 ); see also La. C.E. art. 403.
Taylor emphasized that a pre-trial hearing on admissibility is required. The court further clarified the prosecution's burden of proof at the pre-trial hearing: "[W]hen seeking to introduce evidence pursuant to La. C.E. art. 404 (B), the state need only make a showing of sufficient evidence to support a finding that the defendant committed the other crime, wrong, or act." Taylor , at p. 10, 217 So.3d at 291. Taylor declined to require a specific type of evidence, stating that the sufficiency of testimony or documents, such as a police report or conviction, must be determined on a case-by-case basis. See id. , at p. 12, 217 So.3d at 293.
The State is also allowed to introduce evidence of other crimes, wrongs or acts when the conduct "constitutes an integral part of the act or transaction that is the subject of the present proceeding." This second objection is commonly referred to as the res gestae exception. Evidence admissible under the res gestae exception is not subject to any advance notice requirements by the State. State v. Reichard, 2005-1262, p. 6 (La. App. 4 Cir. 6/21/06), 935 So.2d 727, 731 ; State v. Brown, 2003-1616, p. 10 (La. App. 4 Cir. 3/31/04), 871 So.2d 1240, 1247.
Finally, a trial court's determination of the admissibility of other crimes evidence will not be reversed absent an abuse of discretion. See State v. Copelin , 2016-0264, p. 17 (La. App. 4 Cir. 12/7/16), 206 So.3d 990.
Here, the trial court abused its discretion in allowing the admission into evidence the defendant's prior bad acts under Prieur , and La. C.E. art 404(B). The State failed to provide evidence sufficient to establish that the defendant's conduct fifteen years earlier in Georgia was so similar to the present matter as to constitute a signature crime under a modus operandi theory. The State also failed to establish that the defendant's prior actions constituted res gestae of the instant matter. The only linkable similarities were that the crimes were both violent; a handgun was used to shoot his victims; and the presence and sale of narcotics.
Nevertheless, even if the complained of evidence was erroneously admitted, as we find here, the erroneous admission of other crimes evidence is subject to a harmless-error analysis. See State v. Maise, 2000-1158, p. 8-9 (La. 1/15/02), 805 So.2d 1141, 1147-1148. An error is harmless if the jury's verdict actually rendered at trial was "surely unattributable to the error." Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993) ; cf. Satterwhite v. Texas, 486 U.S. 249, 108 S.Ct. 1792, 1798, 100 L.Ed.2d 284 (1988) (O'Connor, J.) (harmless-error analysis begins with the premise that the evidence admitted at trial is sufficient to support the verdict and asks whether the state can prove " 'beyond a reasonable doubt that the error complained of did not *871 contribute to the verdict obtained.' ") (quoting Chapman v. California, 386 U.S. 18, 22-24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967) ). The evidence of the defendant's guilt was overwhelming. The defendant in the instant matter did point the gun at his victims and fired it several times which shows his requisite specific intent to kill, an essential element of the crimes charged. Additionally the three victims positively identified the defendant as the shooter and DNA evidence placed the defendant at the scene of the crime. Accordingly, we find the trial court error in admitting the evidence of the defendant's prior bad acts to be harmless and no substantive relief is available to the defendant.
ASSIGNMENT OF ERROR NUMBER 4
The defendant in this assignment of error, complains that his sentences are excessive.
The Louisiana Constitution of 1974, Article 1, Section 20, prohibits the imposition of cruel, unusual, or excessive punishment. See also U.S. Const. Amend. 8. A sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La. 1993). A sentence is grossly disproportionate if, when the crime and punishment are viewed in light of the harm to society, it shocks the sense of justice. State v. Weaver, 2001-0467 (La. 1/15/02), 805 So.2d 166.
A trial judge has broad discretion when imposing a sentence and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. On appellate review of a sentence, the relevant question is not whether another sentence might have been more appropriate but whether the trial court abused its broad sentencing discretion. State v. Wilson , 2011-0960 (La. App. 4 Cir. 9/5/12), 99 So.3d 1067, 1071.
In this case, the defendant filed a Motion to Reconsider Sentence arguing that his criminal history consisted of only one conviction for involuntary manslaughter; that the jury found him guilty of the lesser crime of attempted manslaughter on counts 1, 2 and 3 of this indictment, suggesting mitigated culpability for the crimes; and that the trial judge failed to give adequate consideration to the La. C.Cr.P. art.894.1 sentencing guidelines.
The defendant herein received the maximum sentence of twenty years on each of his five convictions. See La. R.S. 14:(27)31; La. R.S. 14:94(F) and La. R.S. 14:95.1. In sentencing the defendant, the trial judge stated:
The court having considered numerous sentencing guidelines under Article 894.1, particularly, these that I will list as follows; that the offender knowingly created a risk of death or great bodily harm to more than one person; the offender used threats of, or actual violence in the commission of the offense; the offense involved multiple victims for which this court will not impose consecutive sentences; the offender used a firearm or other dangerous weapon while attempting to commit or committing this offense, which by its very nature, involved a substantial risk that physical force may be used in the course of committing the offense; the offender foreseeably endangered human life by discharging a firearm during the commission of an offense, which has as an element, the use, attempted use, or threatened use of physical force against a person of another, which by its very nature involves a substantial risk that physical [force] may be used in the course of committing the offense and *872 many other relevant aggravating factors including his failure to show any remorse ...
However, even where there has not been full compliance with La. C.Cr.P. art. 894.1, resentencing is unnecessary where the record shows an adequate factual basis for the sentence imposed. State v. Stukes, 2008-1217, p. 25 (La. App. 4 Cir. 9/9/09), 19 So.3d 1233, 1250 (citing State v. Major, 96-1214, p. 10 (La. App. 4 Cir. 3/4/98), 708 So.2d 813, 819 ). Further, La. C.Cr.P. art. 881.4(D) expressly states that an "appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed." State v. Martin , 2013-0628 (La. App. 4 Cir. 5/28/14), 141 So.3d 933, 944.
Taking into consideration the following factors: the defendant held three victims captive; fired at least seven shots at them, wounding two of the three of them; recounting the victims' testimony they believed they were going to be killed; the defendant's complete lack of remorse for the shootings; the defendant's previous conviction for involuntary manslaughter in Georgia; and the trial judge's explicit consideration of La. C.Cr.P. art. 894.1 sentencing guidelines, we find that the trial judge did not abuse its broad discretion in sentencing the defendant. In fact, the jurisprudence supports the defendant's sentences. The sentence of twenty years for attempted manslaughter was found not excessive in the following cases: State v. Holmes , 99-631 (La. App. 1 Cir. 2/18/00), 754 So.2d 1132 ; State v. Hunter, 47,796 (La. App. 2 Cir. 2/27/13), 110 So.3d 619 ; State v. Maze, 2009-1298 (La. App. 3 Cir. 5/5/10), 36 So.3d 1072 ; State v. Perrilloux, 2003-917 (La. App. 5 Cir. 12/30/03), 864 So.2d 843. Moreover, as discussed above, it appears that the evidence presented would have supported convictions for attempted second degree murder, a crime which carries a maximum sentence of 50 years imprisonment at hard labor without eligibility for parole.
Other similar cases have held the maximum twenty-year sentence for conviction for illegal discharge of a firearm during a crime of violence not excessive. See State v. Windsor, 2014-146, 2014 WL 2019253, at 3, (La. App. 4 Cir. 5/14/14)[5] ; State v. Baham , 2014-653 (La. App. 5 Cir. 3/11/15), 169 So.3d 558, 572-73, writ denied , 2015-40 (La. 3/24/16), 190 So.3d 1189 (held maximum sentence not excessive). Likewise, the maximum sentence for possession of a firearm by a convicted felon have been held not excessive. See State v. Gailes, 2013-2209, (La. App. 1 Cir. 6/6/14), 2014 WL 3843883, at 7,(defendant found guilty of manslaughter and possession of a firearm by a convicted felon, and sentenced to the maximum term of twenty years at hard labor for violating La. R.S. 14:95.1 ).[6]
The defendant's complaint that his sentences are excessive is unpersuasive. This assignment is meritless.
*873 CONCLUSION
Accordingly, the defendant's convictions and sentence are affirmed.
AFFIRMED

The defendant does not speak English; however, he received the assistance of a Spanish translator throughout this proceeding.

When a defendant is charged with a crime and the jury returns a responsive verdict, the evidence is sufficient to support the responsive verdict if it is sufficient to support the crime as charged, as long as the defendant did not object to the inclusion of this lesser included offense. See State v. Schrader , 518 So.2d 1024 (La. 1988) ; State ex rel. Elaire v. Blackburn , 424 So.2d 246 (La. 1982) ; State v. Beaulieu , 2012-0735 (La. App. 4 Cir. 8/7/13), 122 So.3d 1050.

Whether that conviction qualified to establish relator's status as a convicted felon for purposes of R.S. 14:95.1 is discussed below in response to Assignment of Error No. 1.

Ga. Code Ann. § 16-5-3(a) provides:
A person commits the offense of involuntary manslaughter in the commission of an unlawful act when he causes the death of another human being without any intention to do so by the commission of an unlawful act other than a felony. A person who commits the offense of involuntary manslaughter in the commission of an unlawful act, upon conviction thereof shall be punished by imprisonment for not less than one year nor more than ten years.

This case is published on the Fourth Circuit's website and may be cited as authority despite not being designated for publication.

Because the statutory maximum changed in 2011 from fifteen years to twenty years, there is a lack of jurisprudence where the defendant was sentenced to the maximum of twenty years but considerable case law upholding the maximum sentence of fifteen years for felon in possession of a firearm where the defendant has prior convictions. See State v. Crawford, 03-1494 (La. App. 5 Cir. 4/27/04), 873 So.2d 768 (the defendant had previous convictions for crimes of violence and a propensity for recidivism, and thus the trial judge did not abuse his discretion in imposing the maximum sentence on the defendant); State v. Taylor, 2004-689 (La. App. 5 Cir. 12/14/04), 892 So.2d 78 (the defendant had numerous felony convictions and the trial court did not abuse its discretion in imposing the maximum fifteen-year sentence).